1  HEATH STEINBECK, LLP
2  Steven A. Heath (SBN 250867)
   saheath@heathsteinbeck.com
3  Uyen N. Nguyen (SBN 209753)
   unguyen@heathsteinbeck.com
4  15233 Ventura Blvd., Ste. 500
   Sherman Oaks, California 91403
5  Telephone: (213) 335-6245
6  Facsimile: (213) 335-6246

7  Attorneys for Plaintiff
   NEIL RICHARDSON
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL RICHARDSON, an individual, | Case No. 2:23-cv-08105 |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | (1) **BREACH OF CONTRACT;** |
| | (2) **UNJUST ENRICHMENT; and** |
| DIMITRI ELKIN, an individual; and CAROLINE LEE ELKIN, an individual, | (3) **SPECIFIC PERFORMANCE** |
| Defendants. | |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff NEIL RICHARDSON, an individual, brings this action for breach of contract, unjust enrichment, and specific performance against Defendants DIMITRI ELKIN, an individual, and CAROLINE LEE ELKIN, an individual, and alleges in support of his Complaint as follows:

## PRELIMINARY STATEMENT

1. There is a saying that 'no good deed ever goes unpunished.' In July 2020, Richardson, seeking to do a good deed for a business associate and his wife, transferred $600,000 to the Defendants. Those funds allowed Defendants to keep their home, avoid selling it in their pending divorce, and to retain an asset that has increased meaningfully in value in the ensuing three-year period. Defendants enjoyed these benefits by using Richardson's financing which, to date, has been interest-free and led to an amazingly-favorable outcome for each of them.

2. As security, Richardson requested that Defendants transfer to him stock worth $600,000 in a company founded by him and Dimitri Elkin. That company is now publicly-traded on the NASDAQ. Because the founder stock Defendants transferred was already pledged as collateral to a third-party, Defendants agreed that, in the event the third-party foreclosed on the collateral, they would 'true up' Richardson by giving him additional stock in the company worth up to $600,000.

3. In June 2023, the third-party did, in fact, foreclose on the collateral. This, in turn, triggered Defendants' obligation to transfer to Richardson additional company stock worth $600,000. And yet – the ultimate manifestation that no good deed does, in fact, go unpunished – Defendants now claim they owe nothing to Richardson at all.

4. In this action, Richardson seeks to hold Defendants to account for breach of contract and unjust enrichment. In the alternative, Richardson seeks a decree of specific performance. Because the written contract contains a prevailing parties' clause, Richardson also seeks an award of attorneys' fees and costs.

## THE PARTIES

5. Plaintiff NEIL RICHARDSON ("Richardson") is an individual residing in

London, United Kingdom. Richardson is a successful businessman and investor, having previously founded Lion Capital, LLP and held senior positions at Bain & Co., Inc., Credit Suisse AG, and Kohlberg Kravis Roberts & Co., LP. He received his undergraduate and graduate degrees from the University of Oxford.

6. Defendant DIMITRI ELKIN is an individual residing in Los Angeles, California. Dimitri Elkin claims to be a successful investor, has an undergraduate degree from Moscow State University Lomonosov, and an MBA from Harvard University.

7. Defendant CAROLINE LEE ELKIN is an individual who, upon information and belief, resides in Salt Lake City, Utah and works in Santa Monica, California. According to her profile on the State Bar of California's website, Caroline Elkin was admitted to practice law in California in 2000 and works in Santa Monica as in-house counsel to a prominent technology company. She previously spent more than 10 years working in private practice, having received her J.D. from Georgetown University Law Center and a B.A. from Yale University.

**JURISDICTION AND VENUE**

8. This Court has diversity jurisdiction to hear and determine the claims presented in this action pursuant to 28 U.S.C. § 1332(a)(2). As alleged above, Richardson, Dimitri Elkin, and Caroline Elkin are "citizens of a State and citizens or subjects of a foreign state" and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Dimitri Elkin resides in this District, Caroline Elkin works in this District, and a substantial part of the events giving rise to Richardson's claims occurred within this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

10. On or around November 30, 2017, Twelve Seas Investment Company ("Twelve Seas") was formed as a Cayman Islands exempted company. Twelve Seas' founding shareholders include Twelve Seas Sponsor, I, LLC ("TSS"), a Delaware limited

2
**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

liability company, of which Richardson and Dimitri Elkin are two of several members. Upon Twelve Seas' formation, TSS and the other founding shareholders (the "Initial Shareholders") purchased 5,175,000 ordinary shares in Twelve Seas (the "Founder Shares").

11. Twelve Seas was a special purpose acquisition company, also known as a "blank check company" – that is, a company that raises money from public markets in order to acquire, merge, or otherwise engage in a business combination with an appropriate target. Richardson served as Twelve Seas' chairman and Dimitri Elkin as its chief executive officer.

12. In April 2019, Twelve Seas agreed to a reverse merger with Brooge Holdings Limited ("BHL"), another Cayman Islands exempted company. BHL's principal asset was a subsidiary, Brooge Petroleum And Gas Investment Company ("BGPIC"), formed under the laws of the Fujairah Free Zone in the United Arab Emirates. BGPIC operates an oil storage and services business in the UAE port of Fujairah.

13. Twelve Seas' merger with BHL was finalized in December 2019, with BHL subsequently rebranding as "Brooge Energy Ltd" ("BEL"). BEL's shares have since listed on the NASDAQ under the ticker symbol "BROG."

14. Pursuant to the merger, the Initial Shareholders agreed to forfeit, on a *pro rata* basis, twenty percent (20%) of their Founder Shares. The Initial Shareholders also agreed to deposit thirty percent (30%) of the Founder Shares into escrow, pursuant to an Initial Shareholder Escrow Agreement dated December 20, 2019 by and between BHL, Continental Stock Transfer & Trust Company, and the Initial Shareholders. Pursuant to that agreement, the Founder Shares would be returned to the Initial Shareholders if BEL met certain performance targets.

15. Concurrently with the merger, and in order to secure for BEL funding from a third-party investor, Magnetar Financial, LLC and certain affiliates ("Magnetar"), TSS subsequently pledged the remainder of its Founder Shares (i.e., TSS' ordinary shares in

Twelve Seas, minus twenty percent (20%) previously forfeited) to Magnetar as collateral for its investment (the "TSS Founder Shares"). In the event Magnetar did not secure a specified rate of return on its investment by the end of 2022, Magnetar could foreclose on the TSS Founder Shares.

16. In early 2020, after the merger was completed, but with the TSS Founder Shares pledged as collateral for up to three years, Dimitri Elkin approached Richardson and asked for financial assistance. Dimitri Elkin told Richardson that he and Caroline Elkin were finalizing their divorce, that he wanted to keep their home in Los Angeles, and that he lacked the financial resources to pay Caroline Elkin her share of the divorce settlement. Defendants asked Richardson if he could loan them $600,000 so they could avoid selling the property as part of their divorce settlement.

17. Richardson agreed to transfer $600,000 to Defendants provided that, *inter alia*, (a) Defendants agreed to conditionally sell to Richardson 120,000 of the TSS Founder Shares they owned through their membership of TSS at a valuation of $5.00 per share; (b) Defendants agreed to transfer to Richardson additional shares in BEL worth up to $600,000 in the event Magnetar foreclosed on the TSS Founder Shares; (c) Richardson would have the option to convert his $600,000 transfer to a loan secured against Defendants' home; and (d) Defendants and Richardson entered into a written contract setting forth their agreement. Defendants readily agreed, and thanked Richardson for his assistance and generosity.

18. Accordingly, on or around July 6, 2020, Richardson and Defendants entered into a Share Purchase Agreement With Option To Convert To Loan (the "Agreement"). A true and correct copy of the Agreement is attached to this Complaint as **Exhibit 1** and incorporated herein by this reference.

19. Section 1 of the Agreement, entitled "Purchase and Sale of Shares," states that Defendants (referenced as "Sellers," with Richardson referenced as "Purchaser") "shall, sell, transfer, assign and convey to Purchaser 120,000 shares (the "Shares") of Brooge Energy Limited at a purchase price of $5.00 per share, and Purchaser shall pay

Sellers $600,000 USD ("Purchase Price")…"

20. Section 3 of the Agreement, entitled "<u>Magnetar True Up</u>," states that "[t]o the extent the number of Shares is reduced because of the Guarantee Agreement between Twelve Seas Sponsors [i.e., TSS] and Magnetar, the Sellers agree to transfer to the Buyer additional shares of the Brooge stock owned by the Sellers to compensate the Buyer for such decrease." The "Guarantee Agreement" is a reference to TSS' obligations to Magnetar, which was holding the TSS Founder Shares as collateral.

21. Richardson duly delivered to Defendants the Purchase Price of $600,000 for the Shares.

22. On or around June 20, 2023, Magnetar foreclosed on the TSS Founder Shares, including all Shares (as defined in the Agreement) otherwise owned by Dimitri Elkin and/or Caroline Elkin through their membership of TSS.

23. Defendants have since failed to "true up" Richardson by transferring to him additional BEL stock worth $600,000 as required under Section 3 of the Agreement.

24. On August 31, 2023, Richardson, through his counsel, sent Defendants a letter demanding that Defendants comply with their obligations in the Agreement.

25. On September 6, 2023, despite acknowledging receipt of $600,000 from Richardson, that Richardson's transfer of the funds saved them from having to sell their home, and having essentially had the benefit of a $600,000 interest-free loan for more than three years to retain possession of real property that has appreciated significantly in value, Defendants sent a reply letter denying any liability.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against All Defendants)

26. Richardson incorporates and re-alleges paragraphs 1 through 25, inclusive, as though fully set forth herein.

27. On or around July 6, 2020. Richardson and Defendants entered into the Agreement. The Agreement is a valid contract between Richardson, on the one hand,

and Defendants, on the other hand.

28. Richardson has performed all covenants and conditions, and each and every one of his obligations, under the Agreement, except to the extent such performance was waived, excused, or prevented by reason of Defendants' act and/or omissions.

29. Defendants have materially breached Section 3 of the Agreement. As alleged above, on or around June 20, 2023, Magnetar foreclosed on the TSS Founder Shares. Defendants are therefore obligated pursuant to Section 3 of the Agreement to transfer to Richardson shares in BEL worth $600,000, but have failed to do so.

30. Richardson has suffered, and will continue to suffer, damages in an amount to be proven at trial, but not less than $600,000, proximately caused by Defendants' above-described breach of the Agreement.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (Against All Defendants)

31. Richardson incorporates and re-alleges paragraphs 1 through 25, inclusive, as though fully set forth herein.

32. As a result of their aforementioned wrongful conduct, Defendants have been unjustly enriched at the expense of Richardson, and have unjustly retained the benefits of their wrongful conduct.

33. As a direct and proximate result of Defendants' wrongful conduct, Richardson has suffered damages. Richardson is entitled to a constructive trust and restitution of the amounts wrongfully taken and/or retained by Defendants at Richardson's expense.

## THIRD CLAIM FOR RELIEF

### Specific Performance

### (Against All Defendants)

34. Richardson incorporates and re-alleges paragraphs 1 through 25, inclusive, as though fully set forth herein.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

35. Richardson brings this claim as an alternative to his First Claim for Relief for Breach of Contract.

36. The Agreement is a just and reasonable contract and is supported on both sides by adequate consideration.

37. Richardson's remedy in damages or in an action at law for Defendants' breach of the Agreement will be inadequate to protect Richardson's rights. As such, the Agreement is a specially-enforceable contract.

38. Richardson has performed all covenants and conditions, and each and every one of his obligations, under the Agreement, except to the extent such performance was waived, excused, or prevented by reason of Defendants' act and/or omissions.

39. Defendants have materially breached Section 3 of the Agreement. As alleged above, on or around June 20, 2023, Magnetar foreclosed on the TSS Founder Shares. Defendants are therefore obligated pursuant to Section 3 to transfer to Richardson shares in BEL worth $600,000, but have failed to do so.

40. In light of Richardson's inadequate remedy at law, the fact that Defendants' conduct and wrongful failure to transfer to Richardson shares in BEL worth $600,000 will produce a great or irreparable injury to Richardson, and the fact that any judgment in this action based purely on monetary relief will be ineffectual and/or insufficient to compensate Richardson for the harm he has suffered, Richardson is entitled to an order for specific performance requiring Defendants, and each of them, to deliver to Richardson the "additional shares of the Brooge stock" as set forth in the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NEIL RICHARDSON prays for judgment against Defendants DIMITRI ELKIN and CAROLINE LEE ELKIN, as follows:

A. That judgment be entered in his favor, and against the Defendants, and each of them;

B. For compensatory damages and general damages according to proof, but not less than $600,000;

7
**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

  C. For restitution and/or disgorgement of all sums unlawfully obtained and./or retained by Defendants;

  D. For an order of specific performance as requested above;

  E. For reasonable attorney's fees pursuant to Section 13 of the Agreement;

  F. For prejudgment interest;

  G. For costs of suit; and

  H. For such other relief as the Court deemed just and proper.

Dated: September 27, 2023  Respectfully submitted,

        HEATH STEINBECK LLP

        _____
        Steven A. Heath
        Uyen N. Nguyen
        Attorneys for Plaintiff NEIL RICHARDSON

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

EXHIBIT 1 TO COMPLAINT

## SHARE PURCHASE AGREEMENT WITH OPTION TO CONVERT TO LOAN

This Share Purchase Agreement with Option to Convert to Loan (the "Agreement") dated as of the 6th day of July 2020 is entered into by and among Caroline Lee Elkin and Dimitri Elkin (each "Seller" and together "Sellers"), whose address is 2685 Nottingham Avenue, Los Angeles, California 90027, United States, and Neil Richardson ("Purchaser"), whose address is 17 Kensington Gate, London, W8 5NA, United Kingdom.

**BACKGROUND**

The Sellers are the owners of a certain number of shares of Brooge Energy Limited held by Twelve Seas Sponsors I, LLC in the name of Dimitri Elkin, as well as the legal owners of record for a single-family residence at 2685 Nottingham Avenue, Los Angeles, California 90027 (the "Property").
The Sellers desire to sell a portion of their shares in Brooge Energy Limited to the Purchaser, and the Purchaser desires to purchase the shares from the Seller.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale of Shares
1. Sellers shall sell, transfer, assign, and convey to Purchaser 120,000 shares (the "Shares") of Brooge Energy Limited at a purchase price of $5.00 per share, and Purchaser shall pay Sellers $600,000 USD ("Purchase Price") by the delivery of cash by wire transfer per wire instructions provided below. The parties acknowledge and agree that the Purchase Price was negotiated in good faith between the parties.

Option
2. Sellers grants to Purchaser the future option ("Option") to convert said Purchase Price to a loan, for a return of the Shares purchased in exchange for repayment of the Purchase Price, provided that the number of Shares to be so returned shall be adjusted pursuant to the Guarantee between Twelve Seas Sponsors I, LLC and Magnetar. The Option shall mature on December 20, 2022 (the "Maturity Date"). Purchaser may exercise the Option at any time between January 1, 2021 and December 31, 2022 (such period, the "Option Period"), by giving Sellers written notice of his intention to exercise the Option. In the event the Option is exercised, all consideration paid for the Shares shall be considered a loan, which loan shall be subject to repayment upon terms set forth in Section 6 below. In the event that Purchaser does not exercise the Option, the consideration paid to Sellers for the Shares may be retained by Sellers in full.

Magnetar True Up
3. To the extent that the number of Shares is reduced because of the Guarantee Agreement between Twelve Seas Sponsors and Magnetar, the Sellers agree to transfer to the Buyer additional shares of the Brooge stock owned by the Sellers to compensate the Buyer for such decrease.

1

Private Placement Shares
    4. Sellers confirm that the 120,000 Shares will include all dividend-yielding private placement shares and all risk capital shares owned by the Sellers.

No Second Lien or Further Encumbrances on Shares
    5. Sellers agree that they shall not sell, convey, mortgage, pledge, grant a security interest in, or otherwise place a second lien on the remaining Brooge Shares without the prior written consent of Purchaser.

Exercise of Option
    6. In the event Purchaser's exercises the Option during the Option Period, then notwithstanding the provisions of Section 7 below, Sellers shall have the right to refinance the Property (either as a second lien or a refinance of the First Mortgage (as hereinafter defined)) without Purchaser's consent and without any penalty for a period of five (5) months from the date of exercise of Option in order to repay the amount of $600,000 to Purchaser in a lump sum. If Sellers fail to repay the amount of $600,000 in a lump sum within five (5) months of the exercise of Option, then interest shall be deemed to have commenced accruing at 10% per annum as of the December 20, 2022 (such interest, the "Accrued Interest"). Upon the expiration of such five (5) month period, if the Sellers shall have failed to timely repay Purchaser, the Sellers shall grant a second lien mortgage in the amount of $600,000 plus all Accrued Interest to Purchaser and Purchaser's successors and assigns, with power of sale, encumbering the Property. Purchaser acknowledges that such second lien shall be subject to the First Mortgage (as hereinafter defined). The second lien mortgage shall provide (i) an interest rate of 10% per annum, which shall be payable in monthly installments, (ii) the loan is non-recourse to Sellers, (iii) the loan may be prepaid at any time by Sellers without penalty, (iv) the loan shall be repaid in full within 180 days from the date of the mortgage and (v) once the loan has been repaid in full to Purchaser, Purchaser shall remove the second lien from the Property. The parties agree to negotiate in good faith the documentation evidencing the second lien mortgage. Each party shall execute and deliver such other agreements, documents or instruments and take such other actions as may be reasonably necessary or desirable to effectuate the second lien.

No Further Encumbrances on Property
    7. Sellers shall not sell, convey, mortgage, pledge, grant a security interest in, or otherwise transfer or encumber all or any part of the Property or any interest therein without the prior written consent of Purchaser. If Sellers fail to comply with this Section 7 and a second lien shall encumber the Property without Purchaser's prior consent, Sellers shall pay to Purchaser a $200,000 penalty.

Subordination
    8. This Agreement shall be subordinate only to a First Mortgage (the "First Mortgage") currently held by Bank of the West ("First Mortgage Lender"), encumbering the Property in favor of First Mortgage Lender in the amount of $1,081,244.35 as of the date of this Agreement. However, Sellers represent that the value of the Property far exceeds the amount of the First Mortgage, as evidenced by the appraisal, attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

Wire Instructions

9. <u>Wire Instructions:</u>

|                       |                                           |
|-----------------------|-------------------------------------------|
| Bank name and address: | JPMorgan Chase                           |
|                       | 4500 Los Feliz Blvd., Los Angeles CA 90027 |
| SWIFT Code            | CHASUS33                                  |
| Routing number:       | 021000021                                 |
| Account name:         | Dimitri Elkin                             |
| Account number:       | 730003083465                              |

Notices

10. All notices given by Sellers or Purchaser in connection with this Agreement must be in writing. Any notice to Sellers in connection with this Agreement shall be deemed to have been given to Sellers when mailed by first class mail, postage prepaid, or when actually delivered to Sellers' notice address if sent by other means. The notice address shall be the Property address unless Sellers have designated a substitute notice address by notice to Purchaser. Any notice to Purchaser shall be given by delivering to it or by mailing it by first class mail, postage prepaid, to Purchaser's address stated herein unless Purchaser has designated another address by notice to Sellers. Any notice in connection with this Agreement shall not be deemed to have been given to Purchaser until actually received by Purchaser. If any notice required by this Agreement is also required under applicable law, the applicable law requirements will satisfy the corresponding requirement under this Agreement.

Release

11. Upon the expiration of the Option, Purchaser shall discharge the lien on the Property associated with this Agreement.

Successors and Assigns

12. This Agreement shall be binding upon and inure to the benefit of the Sellers, the Purchaser and their respective successors and assigns; provided, however, that the Sellers may not assign this Agreement in whole or in part without the Purchaser's prior written consent and the Purchaser at any time may assign this Agreement in whole or in part.

Attorneys' Fees

13. If either party hereto fails to perform any of its obligations under this Agreement or if a dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Agreement, then the defaulting party or the party not prevailing in such dispute shall pay any and all costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and attorneys' fees and disbursements. Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable

3

separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any such judgment.

Miscellaneous

14. The obligations and liabilities of each person comprising Sellers under this Agreement shall be joint and several. This Agreement shall be governed by and construed in accordance with the laws of the State of California. If any provision hereof is determined to be unenforceable or invalid, such provision or such part thereof as may be unenforceable or invalid shall be deemed severed from this Agreement, and the remaining provisions shall be carried out with the same force and effect as if the severed provision or part had not been made a part hereof.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Sellers, and the Purchaser as of the day and year first written below:

PURCHASER:

_____
Neil Richardson

_____
Date

SELLER:

_____
Caroline Lee Elkin

July 6, 2020
Date

SELLER:

_____
Dimitri Elkin

July 6, 2020
Date

4