UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC                                   Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

Present: The Honorable Stephanie S. Christensen, U.S. Magistrate Judge

| Teagan Snyder | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** FINDINGS OF FACT AND CONCLUSIONS OF LAW FRCP 52

    1.    The Court conducted a bench trial in this contract dispute on December 11 and 12, 2024. The Court also allowed the parties to submit additional post-trial briefs on legal issues which the Court has considered.

    2.    The issue at trial was Plaintiff Neil Richardson's contention that he was entitled to recoup the value of $600,000 that he provided to his former business partner and the partner's former spouse, Defendants Dimitri Elkin and Caroline Lee Elkin,[1] pursuant to a contract between the parties. Summary judgment was denied based on a finding of ambiguity in the contract, including in Section 3, the

---

[1] As Defendants share a last name, for clarity, the Court refers to Defendants by their first name only when identified individually.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC                              Date: December 20, 2024

Title      Neil Richardson v. Dimitri Elkin, et al.

meaning of which was the focus of trial.  A fair reading of the contract, guided by the extrinsic evidence presented at trial, does not support a finding that the parties agreed that Richardson would be compensated pursuant to Section 3 under the circumstances that transpired.  As a result, the Court enters judgment in favor of the defense.

## Background and Key Facts[2]

3.   In November 2017, Richardson and Dimitri were among several founders of Twelve Seas Sponsors I LLC.  (Ex. 3 at 1, 24, 26.)  Twelve Seas was a Special Purpose Acquisition Company, or SPAC, a company created to acquire or merge with another company.  (ECF 103 at 13, 15–17.)  The Twelve Seas founders indirectly owned, through Twelve Seas, an interest in a percentage of the 4,140,000 of Twelve Seas units.  (Ex. 3 at 3, 26.)  In December 2019, Twelve Seas entered into a business combination.  (*Id.* at 2.)  When the transaction was finalized, the 4,140,000 shares of Twelve Seas stock was exchanged for an equal number of shares (the Founders Shares) of the new entity—Brooge Holdings Limited.  (*Id.* at 3, 6.)  Brooge stock was thereafter listed on the NASDAQ exchange under the ticker symbol BROG.  (*Id.* at 2.)

4.   In order to secure funding necessary to close the Brooge deal, approximately $20 million was sought from a third-party investor, Magnetar Financial LLC (Magnetar).  (ECF 103 at 20–21; Ex. 3 at 2.)  Twelve Seas held the Founders Shares as collateral to guarantee to Magnetar a specific return on its investment (the Magnetar Guaranty).  (Ex. 2 at 5; Ex. 3 at 4.)  Under the Magnetar Guaranty, if Magnetar did

---

[2] To the extent that any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC                     Date: December 20, 2024

Title        Neil Richardson v. Dimitri Elkin, et al.

not secure the guaranteed return by December 20, 2022—which was later extended to June 2023—Magnetar could foreclose on some, or all, of the Founders Shares, as necessary to realize the return. (Ex. 1 at 1, 3; Ex. 2 at 1–2, 5–6; Ex. 3 at 4; ECF 103 at 39, 123.) Until the terms of the Magnetar Guaranty expired, founding Twelve Seas members, such as Richardson and Dimitri, could only transfer their rights to the Founders Shares to another person bound by the Magnetar Guaranty, such as another Twelve Seas founder. (Ex. 3 at 17–18.)

     5.    The Elkins divorced in 2019. (ECF 103 at 67.) As a result of the divorce settlement, Dimitri was required to pay $600,000 to Caroline. (*Id.* at 71, 85, 92, 124.) In early 2020, Dimitri and Richardson discussed an agreement by which Richardson would buy Brooge stock from Dimitri so the latter could pay his obligation to Caroline.[3] (*Id.* at 24–25, 94, 109–10, 114.)

     6.    Between May and July 2020, the parties exchanged several drafts of a written agreement, which Caroline, who is an attorney, had drafted.[4] (Exs. 4, 8–20; ECF 103 at 70.)

     7.    On May 19, 2020, Dimitri emailed Richardson and confirmed, in part, Dimitri's understanding that the agreement being negotiated would include a term that, when the Magnetar Guaranty

---

[3] Richardson and Dimitri dispute which of them proposed the deal, but the Court finds the origin immaterial. (ECF 103 at 24–25, 109–10, 114.)

[4] Another attorney was consulted regarding language related to establishing a lien on the real property, but that relates to sections of the contract not at issue. (ECF 103 at 51, 58–59, 95, 99–102; Exs. 14, 19, 23, 24.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08105-SSC                        Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

expired—at the time presumed to be December 20, 2022—Richardson would "have a choice of keeping the Brooge shares [purchased by Richardson from the Elkins], or requesting repayment of the $600,000." (Ex. 4 at 1–2; Ex. 103 at 39, 123.)  Seven days after this email, on May 26, 2020, Section 3 appeared for the first time in the proposed agreement.  (Ex. 9 at 2.)  Section 3 provided a "true up" provision, by which the Elkins would compensate Richardson, should the number of shares purchased by Richardson from the Elkins be "reduced because of the [Magnetar Guaranty]."  (*Id.*)  No further memorialized communications were exchanged between the parties regarding Section 3.  (Exs. 10–20.)

8. The final version of the contract was titled "Share Purchase Agreement with Option to Convert to Loan" (the Agreement).  (Ex. 5.)  It was finalized on July 20, 2020, and signed by Caroline and Dimitri, although the record does not contain a copy of the Agreement signed by Richardson.  (Ex. 5.)

9. The final agreement stated that Richardson would provide Dimitri with $600,000 in exchange for Dimitri transferring 120,000 of Dimitri's Brooge Founder Shares at $5 per share to Richardson.  (Ex. 5 at 1.)  Around this time, Brooge stock was trading for $10 per share and Richardson had invested $5 million to purchase other shares of Brooge stock at a price of $10 per share.  (ECF 103 at 110, 114.)

10. The pertinent parts of the contract read as follows:

   a.   **Section 1** of the Agreement, was titled "Purchase and Sale of Shares" and provided that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08105-SSC                                    Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

> [The Elkins] shall sell, transfer, assign, and convey to [Richardson] 120,000 shares (the "Shares") of Brooge . . . at a purchase price of $5.00 per share, and . . . [Richardson] shall pay [the Elkins] $600,000 USD ("Purchase Price") by the delivery of cash by wire transfer per wire instructions provided below. The parties acknowledge and agree that the Purchase Price was negotiated in good faith between the parties.

(Ex. 5 at 1.)

      b.    Section 2 of the Agreement provided Richardson with an option to convert the stock purchase into a loan. (*Id*. at 1.) Under this option, if exercised by Richardson, Richardson would return the 120,000 shares of Brooge stock to the Elkins and the Elkins would be required to repay to Richardson the $600,000 under specific terms detailed in the Agreement. (*Id*. at 1–2.) Section 2 specified that the option "mature[d]" on December 20, 2022, and that Richardson had to exercise this option, if at all, no later than December 31, 2022. (*Id*. at 1.) In the event that Richardson did not exercise his option under Section 2, the Elkins were entitled to keep the $600,000 in full. (*Id*.)

      c.    **Section 3** of the Agreement, titled "Magnetar True Up," provided that:

> To the extent that the number of [Brooge] Shares is reduced because of the Guarantee Agreement between Twelve Seas Sponsors and Magnetar, [Dimitri and Caroline] agree to transfer to [Richardson] additional shares of the Brooge stock owned by [Dimitri and Caroline] to compensate [Richardson] for such decrease.

Case 2:23-cv-08105-SSC   Document 112   Filed 12/20/24   Page 6 of 15   Page ID #:1375

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08105-SSC                          Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

(*Id.*)

11. The language of Section 3 that appeared in the final draft of the agreement was identical to the original language first proposed on May 26, 2020. (*Id.*; Ex. 9 at 2.)

12. The Agreement did not contain an integration clause. (Ex. 5.)

13. On July 13, 2020, Dimitri initiated a transfer of 120,000 shares of his Brooge stock to Richardson. (Ex. 22 at 1–2.) On July 22, 2020, Richardson wired $600,000 to Dimitri (Ex. 7), and, subsequently, Dimitri transferred the $600,000 to Caroline. (ECF 103 at 86.)

14. Richardson never exercised his option to convert the purchase agreement to a loan under Section 2 of the Agreement. (*Id.* at 38.)

15. The Magnetar Guaranty term was extended from December 2022 to June 2023. (*Id.* at 39.) Richardson personally negotiated the extension. (*Id.*)

16. Aside from the 120,000 Founders Shares Richardson purchased from Dimitri, Richardson owned more than 600,000 additional Founders Shares, which were also in escrow as collateral for Magnetar. (Ex. 3 at 26; ECF 103 at 22–24.)

17. At the end of June 2023, pursuant to the terms of the Magnetar Guaranty, Magnetar foreclosed on all the Founders Shares, including the 120,000 Brooge shares Richardson had acquired from Dimitri under the Agreement. (ECF 103 at 40, 88–89.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC                              Date: December 20, 2024

Title        Neil Richardson v. Dimitri Elkin, et al.

### Legal Principles Governing Breach of Contract Claim

18.    The parties agree that this contract dispute is governed by California contract law, which is applicable to this diversity action. (ECF 85 at 6; ECF 86 at 4–5); *see Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 841 (9th Cir. 2005), *as amended*, 433 F.3d 1089 (9th Cir. 2006) (applying state substantive law to "a simple state-law contract claim between private parties" in federal court "solely on the [basis of] diversity of citizenship of the parties").

19.    "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.  When a contract is reduced to writing, "the intention of the parties is to be ascertained from the writing alone, if possible[.]"  Cal. Civ. Code § 1639.

20.    Contract law allows admission of parol, or extrinsic, evidence to resolve an ambiguity.  *WYDA Associates v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996); *see* Cal. Code Civ. Proc. § 1856(g); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992).  Extrinsic evidence may be offered both to explain an obviously ambiguous term and to reveal a latent ambiguity.  *Pac. Gas & E. Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal. 2d 33, 37 (1968); *Employers Reinsurance Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 920 (2008).

21.    An agreement is not ambiguous merely because the parties disagree about its meaning.  *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356 (2010).  Instead, "a contract provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.  But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-08105-SSC                              Date: December 20, 2024

Title  Neil Richardson v. Dimitri Elkin, et al.

ambiguous in the abstract." *Saheli v. White Mem'l Med. Ctr.*, 21 Cal. App. 5th 308, 317–18 (2018) (cleaned up).

22.    When both parties offer reasonable interpretations of a contract term, thereby rendering the term ambiguous, courts "must look to other objective manifestations of the parties' intent." *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1449 (1997).  "[W]here there is no evidence that the parties specifically agreed, or even discussed, how [the term at issue was to be interpreted], the conduct of the parties after the execution of the contract, and before any controversy arose, may be considered in order to attempt to ascertain the parties' intention." *Id.*

### Breach of Contract Analysis

23.    In denying summary judgment based on the parties' arguments then before the Court, the previously assigned district judge ruled that Section 3 was ambiguous and capable of two or more reasonable interpretations.  (ECF 80 at 6–7 (citing *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998) (holding that a contract provision is considered "ambiguous when it is capable of two or more constructions, both of which are reasonable")).)  At trial, the only remaining dispute for the Court's consideration was whether the Elkins had any remaining obligation, under Section 3's true-up provision, to compensate Richardson for the value of the $600,000 underlying the initial purchase agreement after Magnetar called all of the Founders Shares.

24.    The parties agreed that Magnetar called all of the Founders Shares of Brooge stock.  (ECF 103 at 40, 88–89.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-08105-SSC                           Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

25.   The parties, however, gave conflicting testimony as to their understanding of what obligation, if any, the Elkins had to Richardson under Section 3 when Magnetar called all of the shares.

26.   Richardson testified that it was his understanding that, under Section 3's true-up provision, he would receive the full return of the value up to the $600,000 he provided to the Elkins.  (*Id.* at 41, 46.)  The Elkins testified that the true up was cabined by shares they owned and, because Magnetar took all shares the Elkins owned, there were no additional shares of the Brooge stock that they could transfer.  (*Id.* at 89, 116–17, 128–29.)

27.   Neither party presented any evidence that they even discussed, let alone agreed upon, how Section 3 would be interpreted. However, the conduct of the parties during the drafting of the Agreement, and after its execution, provides evidence that it was the parties' intention that Section 3 obligated the Elkins to transfer shares of Brooge stock to Richardson upon the reduction of any shares by Magnetar, and that the shares earmarked for potential transfer from the Elkins to Richardson under Section 3 were the Founders Shares owned by the Elkins.[5]

28.   When the parties were negotiating the Agreement, the main protection provided to Richardson for potential loss resulting from the

---

[5] The Court rejects Plaintiff's invitation to construe Section 3 against the drafting party.  *See Pac. Gas & Elec. Co. v. Super. Ct.,* 15 Cal. App. 4th 576, 596 (1993) (finding that, by its own terms, Section 1654 "applies only as a tie breaker, when other canons fail to dispel uncertainty"), *abrogated on other grounds in Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal. 4th 362, 376–77 (1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-08105-SSC                    Date: December 20, 2024

Title  Neil Richardson v. Dimitri Elkin, et al.

purchase of Dimitri's shares was Section 2, which allowed Richardson the option of returning the Brooge shares to Dimitri and converting the $600,000 that Richardson paid for the shares into a loan repayable by the Elkins under the terms of the Agreement.  (Ex. 4 at 1–2; Ex. 5 at 1–2.)  The number of Brooge shares Richardson was obligated to return to Dimitri upon exercise of the Section 2 option was to be adjusted pursuant to any loss of shares under the Magnetar Guaranty.  (Ex. 5 at 1.)  If Richardson did not exercise his option under Section 2, the Elkins kept the $600,000.  (*Id.*)

29.    Without memorialized negotiation or discussion, Section 3's true-up provision was added as an additional protection for Richardson.  (Ex. 9 at 2; Exs. 10–20.)  Under Section 3, in the event the number of shares Richardson received from the Elkins pursuant to the Agreement was reduced because Magnetar called some of the shares, the Elkins were "to transfer to [Richardson] additional shares of the Brooge stock *owned by* [the Elkins] . . . ."  (Ex. 5 at 1 (emphasis added).)

30.    The only shares of Brooge stock the Elkins ever owned were Dimitri's Founders Shares.  (ECF 103 at 80, 106–08, 121.)

31.    At the time the Agreement was executed, the parties anticipated that they would know whether Magnetar would foreclose on any of the Founders Shares no later than December 20, 2022.  (Ex. 4 at 1–2; ECF 103 at 39, 123.)  And, based on this understanding, Dimitri credibly testified that the parties anticipated that the Elkins' true-up obligation under Section 3 would materialize, if at all, before the December 31, 2022, expiration of Richardson's option under Section 2 to convert the purchase agreement to a loan and recuperate his $600,000.  (ECF 103 at 122–24.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:23-cv-08105-SSC | Date: December 20, 2024 |
| Title | Neil Richardson v. Dimitri Elkin, et al. | |

      32.    The interplay between Section 2's deadline and the then-anticipated expiration date of the Magnetar Guaranty was crucial to the interpretation of Section 3's true-up provision.  This is the time window through which the parties anticipated knowing what shares of Brooge stock the Elkins owned for purposes of satisfying their true-up obligation under Section 3.  In understanding Section 3's true-up provision, the parties necessarily contemplated that the Elkins would be obligated under Section 3 to transfer to Richardson Brooge shares the Elkins owned at the time of any potential foreclosure by Magnetar on or before December 20, 2022.  At that time, instead of being compensated in shares of stock for any loss of value resulting from a Magnetar reduction, Richardson still would have had time to exercise Section 2's option to recover his $600,000.  This interpretation is supported by the fact that the parties agreed that the Section 2 option matured on December 20, 2022, the date they believed the Magnetar Guaranty would expire.[6]  (Ex. 5 at 1.)

      33.    Nothing about the language of Section 3, when read in light of the actions of the parties described above, suggests that the parties contemplated that the Elkins may be obligated under Section 3 to transfer to Richardson any shares of Brooge stock not owned by them at the time of the material events underlying the Agreement, namely the anticipated expiration of the Magnetar Guaranty on December 20, 2022

---

      [6] It is unclear whether this maturity date operated in any actual way to obligate or constrain the actions of the parties under the contract.  Nevertheless, its inclusion is evidence of the fact that, at the time the parties executed the Agreement, they recognized the date on which the Magnetar Guaranty was thought to expire was material to the agreement between the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-08105-SSC                           Date: December 20, 2024

Title  Neil Richardson v. Dimitri Elkin, et al.

and the expiration of Richardson's option under Section 2. And, certainly, none of this evidence suggests that the parties ever contemplated the Elkins being obligated under Section 3 to compensate Richardson with anything other than Brooge shares.

  34. But what the parties, or at least the Elkins, failed to anticipate at the time the Agreement was negotiated was that Magnetar would extend the Guaranty beyond the December 31, 2022, deadline for Richardson to exercise his option under Section 2. However, because Richardson negotiated the extension with Magnetar (ECF 103 at 39), he, at the very least, knew an extension was likely. Thus, he had the requisite knowledge to make an educated decision about whether he should exercise his option under Section 2 before the deadline, based on his estimation of whether Magnetar was likely to foreclose on any, or all, of the Founders Shares after the protections provided under Section 2 expired. He did not exercise his option. (*Id.* at 38.)

  35. Importantly, from the time the purchase agreement was contemplated until the time Magnetar called all of the Founders Shares, Richardson stood to profit from the shares of Brooge stock he purchased above the $600,000, or $5 per share, he had paid for them. And Richardson did not anticipate that Magnetar would foreclose on the Founders Shares, causing Richardson a total loss. (*Id.* at 39–40.) Richardson pursued this potential profit despite the expiration of his safety net under Section 2, and with the undoubted knowledge that, if Magnetar foreclosed on all of the Founders Shares, the Elkins no longer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-08105-SSC   Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

would "own" any shares to transfer to Richardson under the terms of the true-up provision.[7]

36.   Unfortunately for Richardson, what transpired was a series of events that the parties might have anticipated, but, at the time they committed to this potentially risky business arrangement and executed the Agreement, none thought would truly come to pass: (1) Magnetar foreclosed on all of the Brooge stock (*id.* at 40); (2) Magnetar did so after the expiration of Section 2's option period (*id.*; Ex. 5 at 1); and (3) all of the Twelve Seas founding members lost all of their Founders Shares, including the shares Richardson bought from Dimitri (ECF 103 at 40). This was the only scenario under which Richardson did not enjoy some protection under the terms of the contract.

37.   Faced with the conduct of the parties, as it reflects on their intent with respect to Section 3, Richardson has not presented any evidence to support his interpretation of Section 3 other than his own testimony at trial, and that testimony is unpersuasive because it was offered in hindsight to support his claim. *See Young v. Wideawake*

---

[7] Notwithstanding the fact that this potential profit was never achieved, and instead, Richardson lost all of the Founders Shares he owned, the Court notes that Richardson still received full compensation for his $600,000 purchase of Dimitri's shares, *i.e.*, 120,000 shares of Brooge stock at the negotiated price of $5 per share. Above and beyond this full compensation, Richardson stood to gain further under Section 3's true-up provision in the event that his attempt to turn a profit on his purchase of Dimitri's shares did not pay off and Magnetar foreclosed on some, but not all, of the Founders Shares. In this event, Dimitri still would have owned some Brooge shares that he would have been obligated to transfer to Richardson under Section 3's true-up provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC                    Date: December 20, 2024

Title   Neil Richardson v. Dimitri Elkin, et al.

*Death Row Ent. LLC,* No. CV 10-1019 CAS (JEMx), 2011 WL 12565250, at *6 (C.D. Cal. Apr. 19, 2011) ("plaintiff's after-the-fact comprehension of the legal effect of the [contract] adds little to the understanding of the parties' objective mutual intent at the time the [contract] was executed"); *see also Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006) ("California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.  The parties' undisclosed intent or understanding is irrelevant to contract interpretation." (cleaned up)).

38.   Accordingly, at the time "that the number of Shares [wa]s reduced because of the [Magnetar] Guarantee," (Ex. 5 at 1), the Elkins were obligated to transfer to Richardson shares of Brooge stock that they already owned.

39.   The Elkins never owned any shares of Brooge stock besides Dimitri's Founders Shares, which shares were subject to the Magnetar Guaranty.  (ECF 103 at 80, 106–08, 121.)  Thus, when Magnetar called all of the Founders Shares, the Elkins lost all of their shares of Brooge stock.  (*Id.* at 40, 88–89.)

40.   Because the Elkins did not own any shares of Brooge stock after "the number of Shares [wa]s reduced because of the [Magnetar] Guarantee," they did not breach the Agreement by failing to transfer additional shares to Richardson.

### Unjust Enrichment

41.   "Under . . . California . . . law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   2:23-cv-08105-SSC              Date: December 20, 2024

Title    Neil Richardson v. Dimitri Elkin, et al.

agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Here, there exists here a binding contract defining the rights of the parties. Accordingly, Plaintiff's claim for unjust enrichment is precluded. *Id.*

### Specific Performance

42.   "Specific performance is a remedy associated with breach of contract," and thus, "a cause for specific performance ordinarily cannot lie until there has been a breach of the contract." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1167 (9th Cir. 2015) (quoting Restatement (Second) of Contracts § 357; 81A C.J.S. Specific Performance § 4 (2015)).  Because, as explained herein, Richardson has not established that the Elkins breached the Agreement, he is not entitled to specific performance.

### Conclusion

43.   In sum, the Court finds in favor of Defendants Dimitri and Caroline Elkin, and against Plaintiff Neil Richardson on all claims. Judgment will be entered separately.

**IT IS SO ORDERED.**

Initials of Preparer     ts